UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JHOVANY GUTIERREZ MORENO,<br><br>Petitioner,<br><br>v.<br><br>JASON KNIGHT, *et al.*,<br><br>Respondents. | Case No. 1:26-cv-00531-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Jhovany Gutierrez Moreno. Dkt. 1. Petitioner contends that his continued detention is unlawful because ICE failed to make an individualized custody determination under 8 U.S.C. § 1226(a) and is instead detaining him pursuant to a blanket detention policy. In light of these allegations, the Court ordered the federal Respondents to supplement the record regarding (1) Petitioner's initial custody determination and (2) ICE's detention practices in Idaho following the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026).

Having reviewed the record, including the supplemental declaration

submitted by the federal Respondents, and for the reasons explained further below, the Court will deny the Petition.

**BACKGROUND**

Petitioner is a native and citizen of Mexico. He entered the United States in 2020 or 2022.[1] On August 16, 2026, ICE took Petitioner into custody and served him with a Notice to Appear for removal proceedings. *See Callahan Dec.* ¶ 10, Dkt. 8-1. ICE Officer Callahan states that "[d]uring processing ERO Boise made an individual custody determination and decided to keep Petitioner in ICE custody as a flight risk." *Id.* ¶ 11. Petitioner was informed of this decision and served with Form I-286, *Notice of Custody Determination*. Petitioner was also told that he had the right to request review of the custody determination by an immigration judge (IJ), and he requested that review. *Id.* Afterward, however, Petitioner filed the pending habeas petition. He was then transferred to Washington County Jail in Weiser, Idaho. *Id.* ¶ 13. At one point, Petitioner was scheduled to appear before an IJ on September 8, 2026. *See Response,* Dkt. 8, at 3 (indicating that Petitioner was scheduled to appear before an IJ for a review of the custody determination);

---

[1] The Petition states that Petitioner entered the United States in March 2022. *Petition* ¶¶ 1, 25, 31, Dkt. 1. The response brief state that Petitioner "entered the United States at an unknown time and place without inspection by an immigration officer." *Reponse,* Dkt. 8, at 2. Officer Callahan states that Petitioner indicated he entered the United States in March 2020. *Callahan Dec.* ¶ 5, Dkt. 8-1. This factual discrepancy does not affect the outcome here.

*Callahan Dec.* ¶ 17 (indicating that "Petitioner's case is scheduled for an initial master calendar hearing before the Tacoma Immigration Court on September 8, 2026"). The Court does not know if this hearing occurred.

ICE Officer Joshua Tobias participated in Petitioner's individualized custody determination. He says that he "understood at the time the DHS custody determination was made in Petitioner's case that [he] possessed authority to exercise the agency's discretion under INA § 236(a) to either release Petitioner or maintain him in custody, . . . ." *Tobias Dec.* ¶ 6, Dkt. 11-1. More generally, he explains that custody determinations are made on a case-by-case basis, and officers consider an individual's criminal history, community ties, employment history, immigration history, and prior compliance with immigration obligations and other laws. *Id.* ¶ 4. With respect to Petitioner specifically, Officer Tobias says he determined Petitioner was a flight risk after considering several factors, including:

(1) Petitioner's admission that he entered the United States without inspection, "violating United States immigration laws and demonstrating a propensity to evade detection by immigration authorities";

(2) Petitioner's lack of lawful immigration status or pending applications for immigration benefits, which "suggests limited potential for Petitioner to secure legal relief that would incentivize his appearance for future proceedings";

(3) Petitioner's statement that he did not fear returning to Mexico; and

(4) information concerning Petitioner's family ties and criminal history. *Id.* ¶ 7. Officer Tobias noted that although Petitioner reported having a United States citizen spouse, DHS did not reflect that any immigration petitions had been filed on his behalf. He also considered Petitioner's 2024 arrest for resisting or obstructing an officer, which was dismissed, and an August 2026 arrest for driving without privileges. *Id.* More broadly, Officer Tobias clarified that he was not acting pursuant to any blanket detention policy. In his words, "At no time was I mandated by policy, directive, or instruction to detain the Petitioner. It was my delegated-discretionary determination following the individualized review that he should remain in custody." *Id.* ¶ 8.

Officer Tobias's supplemental declaration also addresses ICE's detention practices in Idaho. He states that since July 30, 2026, ERO has conducted 260 initial custody determinations under § 1226(a), resulting in the release of three individuals. *Id.* ¶ 10. He further explains, however, that, because immigration detention capacity in Idaho is limited, ERO employs a selective enforcement strategy. That is, ERO personnel have exercised discretion to pursue alternatives to custodial enforcement—including issuing non-detained Notices to Appear, withdrawing immigration detainers, and selecting "non-custodial enforcement options." *Id.* ¶ 9. Officer Tobias indicates that "[s]ince July 30, 2026, ERO

personnel have used this discretionary authority in no fewer than 15 instances within the Idaho area of operations." *Id*.

## LEGAL STANDARD

A federal court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Throughout our nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.*

The Ninth Circuit recently clarified the statutory framework governing the detention of noncitizens who entered the United States without inspection and were subsequently apprehended in the interior of the country. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the court held that such individuals are subject to the discretionary detention provisions of 8 U.S.C. § 1226(a), rather than the mandatory detention provisions of § 1225(b)(2)(A). *Id.* at 1165. Section 1226(a) permits, but does not require, the Government to detain a non-citizen pending removal proceedings. *Id.* at 1173. Under that provision, the Government may continue detention or release the individual on bond or conditional parole. 8

U.S.C. § 1226(a).

Under this framework, DHS makes the initial custody determination, after which a detained individual may seek review before an Immigration Judge. 8 C.F.R. §§ 236.1(c)(8), 1236.1(d)(1), 1003.19. The Immigration Judge's custody determination may then be appealed to the Board of Immigration Appeals. 8 C.F.R. § 1236.1(d)(3)(i).

Particularly relevant here is that this detention framework requires an actual exercise of discretion. It is not enough for ICE merely to acknowledge that § 1226(a) applies while continuing to detain individuals pursuant to a categorical policy that forecloses consideration of release. At the same time, § 1226(a) does not require ICE to release an individual simply because detention is discretionary. Rather, the statute authorizes detention following an individualized custody determination, subject to the administrative review procedures established by regulation.

## ANALYSIS

The central question here is whether ICE complied with the discretionary detention framework of § 1226(a) when it determined Petitioner should be detained. As noted above, Petitioner contends that ICE did not make a genuine, individualized determination but instead applied a blanket detention policy. *See Petition* ¶ 53, Dkt. 1.

Here, in the initial round of briefing, the federal Respondents represented that ERO Boise had made an individualized determination that Petitioner posed a flight risk. But that initial declaration provided little information concerning the basis for that determination or whether the officer understood that release was an available option. The recently filed supplemental declaration—described at length above—adequately addresses those concerns. As noted, an officer who participated in Petitioner's custody determination expressly stated that he understood he possessed authority to release Petitioner and that no policy, directive, or instruction required detention. He further identified the particular circumstances he considered in determining that Petitioner presented a flight risk.

To be sure, some of the considerations identified by the officer are debatable. For example, the officer relied in part on Petitioner's entry into the United States without inspection as demonstrating a propensity to evade immigration authorities. But entry without inspection is a characteristic shared by many individuals subject to § 1226(a), and that circumstance alone would provide little basis for distinguishing among individuals in making discretionary custody determinations. Likewise, the significance of a dismissed criminal charge or an arrest for driving without privileges may be debatable.

But this Court is not called upon to determine whether it would have reached the same conclusion as to whether Petitioner is a flight risk. Rather, the relevant

question is whether ICE actually exercised the discretion afforded by § 1226(a), rather than detaining Petitioner pursuant to a policy that foreclosed individualized consideration. On this record, the Court concludes that ICE exercised its discretion.

The statistical evidence warrants separate discussion. According to Respondents, ICE conducted 260 initial custody determinations under § 1226(a) following *Rodriguez Vazquez*, but released only three individuals. That represents a release rate of approximately 1.15 percent. Such a low release rate raises questions about whether ICE is genuinely exercising its discretionary authority or instead continuing, in practice, to apply a presumption of detention so strongly that release is rarely a meaningful possibility. Nevertheless, the statistics do not, standing alone, establish that ICE is operating pursuant to a blanket detention policy. The fact that ICE has released three individuals demonstrates that release has occurred, although those releases do not necessarily foreclose the possibility of an informal policy or practice strongly favoring detention. The supplemental declaration, however, provides additional context. As noted above, the officer explains that ICE employs a selective enforcement strategy because of limited detention capacity in Idaho and that ERO personnel have pursued non-custodial enforcement alternatives in at least 15 instances since July 30, 2026. Those alternative enforcement decisions are not equivalent to releases following initial custody determinations, but they nevertheless provide evidence that ICE is

exercising discretion in deciding which individuals to take into custody.

In sum, although the statistical evidence raises some concerns, Petitioner's allegations that he did not receive an individualized custody determination are not borne out by this record.

Finally, the Court will note that it has considered Petitioner's other arguments and finds them unpersuasive. The Court will not address each of these arguments but will briefly comment on two.

First, Petitioner has not demonstrated that the Tacoma Immigration Court has deprived Petitioner's access to counsel by denying requests for remote appearances. *See Mendieta v. Knight*, No. 1:26-cv-494-BLW (D. Idaho Sept. 18, 2026) (observing that because "counsel does not provide a substantive legal argument demonstrating that this policy deprives Mendieta of access to counsel … the Court will not attempt to construct the argument itself") (citing *Indep. Towers of Wa. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Second, regarding the efficacy of bond hearings in Tacoma, the Court recognizes Petitioner's concerns. Still, though, this District's experience with these hearings has been mixed over the past several months. In *Garcia Ortiz v. Henkey,* No. 1:26-cv00043-BLW, for example, this Court ultimately ordered release after concluding that the bond proceeding suffered from significant procedural deficiencies. In *Raygoza Vasquez v. Bernacke,* No. 1:26-cv-0200-BLW, however,

the Court ordered a bond hearing, the IJ conducted that hearing, denied bond, and the petitioner raised no challenge to the adequacy of the proceeding. Additionally, another judge in this District has recently rejected multiple challenges to the adequacy of bond hearings. *See, e.g., Ramirez Juarez v. Leyva,* No. 1:26-cv-00249-AKB, Dkt. 20; *Custodio Ixcoy v. Leyva,* No. 1:26-cv-00298-AKB, Dkt. 28; *Perez-Sanchez v. Leyva,* No. 1:26-cv-00393-AKB, Dkt. 24.

Given this record, while the Court is concerned regarding the fairness and efficacy of bond hearings, it is not willing to presume, before any hearing occurs, that Petitioner will not receive the individualized review contemplated by § 1226(a). That said, if Petitioner does not receive the process to which he is entitled, he may file a motion to enforce this Order. For example, if the IJ declines to conduct the hearing, refuses to consider Petitioner's evidence or otherwise fails to provide a genuinely individualized bond hearing, Petitioner may bring that procedural deficiency to the Court's attention. But a motion to enforce may not serve as a de facto appeal from the IJ's discretionary bond determination.

For all these reasons, the Petition will be denied to the extent he requests release. As for Petitioner's alternative request for a bond hearing, that request will be granted to the extent the hearing has not already occurred.

## ORDER

**IT IS ORDERED that:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART and DENIED IN PART**. If Petitioner has not already received a bond hearing before an Immigration Judge, Respondents shall ensure that such a hearing occurs within seven (7) days of this Order. The Petition is **DENIED** in all other respects.
2. The Government shall file a status report within ten (10) days of the date of this Order confirming compliance with this Order. The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reason for that denial.
3. Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED AS MOOT**.

DATED: October 30, 2026

B. Lynn Winmill
U.S. District Court Judge